UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ESTELA ESCAMILLA,

        Plaintiff,                    Case No. 5:05-CV-164

v.                                     HON. GORDON J. QUIST

GLENN KIRK, ANTONIA KRAUS,
NANCY CUNNINGHAM, TONY
BENAVIDES, and CITY OF LANSING,

        Defendants.
_____/

## OPINION

Plaintiff, Estela Escamilla, filed a complaint against the Defendants, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1981(a), the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, and the Equal Protection clause of the Fourteenth Amendment under 42 U.S.C. § 1983. The only remaining Defendants are Glenn Kirk and the City of Lansing (the "City"). Now before the Court is the Defendants' motion for summary judgment. For the following reasons, the Court will grant the Defendants' motion for summary judgment.

### I. Background

The City hired the Plaintiff as a receptionist in 1985. Beginning in 1996, the Plaintiff worked as a purchasing aide in the finance department, a Level 28 position. In March 2003, the Plaintiff began working in a temporary "out of class" ("OCA") position, as an administrative assistant to the director of the finance department, Douglas Rubley.[1] This temporary OCA position was a Level 32 position. The terms and conditions of the Plaintiff's employment are governed by a bargaining

---

[1] Rubley described the Plaintiff's OCA position as "executive secretary/administrative assistant, an 'out of class' assignment on an interim basis." (Rubley Aff. at ¶ 4.)

agreement between the City and Teamsters Local 580 CTP.[2]  Rubley retired in November 2003, and Defendant Glenn Kirk replaced him in February 2004.

In July 2004, Kirk announced that all employees working in OCA positions would be returned to their permanent positions.  The Plaintiff was the only minority employee in the finance department who was working OCA.  The Plaintiff returned to her permanent Level 28 purchasing aide position on August 14, 2004, pursuant to Kirk's order and union rules.  Under the terms of the bargaining agreement, temporary positions had to be posted before they could become permanent positions, and interviews would be conducted to fill the positions.  (Escamilla Dep. at 60.)  An employee who filled a temporary OCA position would not automatically occupy the reclassified permanent position, and the bargaining agreement required that an OCA employee must be returned to the permanent position at the conclusion of the temporary OCA position. *Id*.

During the period from March 2004, to September 2005, other OCA employees were returned to their permanent positions.  Some employees interviewed for other positions, including the reclassified as permanent positions, and were promoted.  When the Plaintiff's former OCA administrative assistant position was posted as a permanent position, the Plaintiff applied for the job.  The Plaintiff took a test and was subsequently interviewed and evaluated by a committee consisting of Kirk, Tom Korkoske, and Helen Franse-Hornlein, the City's principal personnel specialist.  A number of other internal candidates applied for the job, but nobody scored high enough to obtain the position. (Escamilla Dep. at 79.)  The position was eventually filled by a candidate from outside the department.

Following the Plaintiff's return to her purchasing aide position, the Plaintiff sought other opportunities.  Upon hearing that another employee, Karen Klein, was taking training classes paid

---

[2]The Plaintiff's "out of class" administrative assistant position was within the Teamsters Local 214 bargaining unit. (Franse-Hornlein Aff. at ¶ 6.)

2

for by the City, the Plaintiff asked for and was granted the same opportunities. The Plaintiff believed that Klein was being treated more favorably, including being groomed for a proposed position which was never created, and the Plaintiff raised these concerns to her union representative. The Plaintiff attended a grievance meeting based on these concerns in January 2005. The Plaintiff also attempted to have her purchasing aide position reclassified at a higher pay level in August 2005.

During the course of the Plaintiff's employment, Kirk made critical remarks about the Plaintiff's job performance. First, at a union grievance meeting in January 2005, Kirk stated that the Plaintiff was not ready to handle the same duties as Klein. (Escamilla Dep. at 60-63.) Second, Kirk made a comment at a managers meeting in February 2005, in conjunction with his proposal that the added duty of answering the department's main phone line be given to the Plaintiff, that in his opinion, the Plaintiff was not working. (Escamilla Dep. at 63, 67-69.) Finally, at the Plaintiff's appeal of the denial of her request to reclassify her permanent position to a higher pay level in August 2005, Kirk characterized the position as "supportive" and "repetitive." (Escamilla Dep. at 79-81.)

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

3

### III.  Discussion

A prima facie case of discrimination under Title VII may be shown by introducing either credible, direct evidence of discriminatory intent or by circumstantial evidence through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 862-63 (7th Cir. 1997); *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1371 (6th Cir. 1995).[3]  A plaintiff who lacks direct evidence can establish a prima facie case of discrimination by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a comparable non-protected person was treated better.  *Mitchell v. Toledo Hosp.* 964 F.2d 577, 582 (6th Cir. 1992).  Under *McDonnell Douglas*, once a plaintiff shows a prima facie case of discrimination, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse action." *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006) (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548-49 (6th Cir. 2004)).  If the defendant presents a legitimate, non-discriminatory reason for its employment decision, the burden shifts back to the plaintiff to demonstrate that the defendant's justification is a pretext for discrimination:

> To raise a genuine issue of fact as to pretext and defeat a summary judgment motion, [plaintiff] must show one of the following: '(1) that the proffered reason [] had no basis in fact, (2) that the proffered reason [] did not actually motivate the action, or (3) that the proffered reason [was] insufficient to motivate the action.'

*Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 584, 589 (6th Cir. 2002) (citing *Nelson v. Gen. Elec. Co.*, 2 Fed.Appx.425, 430 (6th Cir. 2001)).  "Under the first and third methods of

---

[3]Claims arising under 42 U.S.C. § 1981 and the Elliot-Larsen Civil Rights Act are also analyzed under the *McDonnell Douglas* framework.  *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 314, 628 N.W.2d 63, 69 (2001) (internal citation omitted) ("In interpreting provisions of the CRA, we are guided by federal court interpretations of the counterpart federal statute; see title VII of the federal Civil Rights Act of 1964, 42 USC 2000e *et seq.*")

showing pretext, the fact finder may infer discrimination from the circumstances," while under the second method, the plaintiff may not rely exclusively on its prima facie evidence, "but instead must introduce some further evidence of discrimination." *Id*.

The Plaintiff does not introduce any direct evidence of discrimination. Although the Plaintiff contends that Kirk made comments critical of the Plaintiff, all of these comments related to the Plaintiff's job performance and made no reference to her race or national origin. Evidence that requires a factfinder to draw inferences in order to conclude that the challenged action was at least partially motivated by prejudice is not direct evidence. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Therefore, the Plaintiff is relying on circumstantial evidence and must prove that the Defendants discriminated through the *McDonnell Douglas* burden shifting framework.

**A.     Prima Facie Case**

The Plaintiff satisfies the first and third prongs of the prima facie case. The first prong is undisputed, as the Plaintiff is of Hispanic descent. To meet the third prong, the Plaintiff presents the statements of Rubley, the previous director of the finance department, who stated that the Plaintiff, while acting as his administrative assistant, performed the tasks of the position well and as expected. (Rubley Aff. at ¶ 5.) Following the Plaintiff's return to her permanent position, Rubley also wrote a letter to Kirk recommending the Plaintiff for any position at the level of administrative assistant or greater. *Id*. at ¶ 8. The Plaintiff also asserts that her nineteen years of experience qualified her for the position. Therefore, the Plaintiff has shown that she was qualified and has satisfied the third requirement of a prima facie case.

**1.     Adverse Employment Action**

Under the second prong, the Plaintiff claims she suffered an adverse employment action when she was removed from her temporary administrative assistant Level 32 position and returned

to her permanent purchasing aide Level 28 position. The parties dispute whether this constitutes an adverse employment action.

The Sixth Circuit has discussed the factors to be considered when determining whether there has been an adverse employment action:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). The Sixth Circuit has not directly addressed whether the return of an employee from a temporary position to a permanent position constitutes an adverse employment action. A district court in the Tenth Circuit faced a similar situation in *Atkins v. Boeing Co.*, Civ. A. No. 91-1404-MLB, 1993 WL 186170 (D. Kan. May 5, 1993), *aff'd*, 28 F.3d 112, *1 (10th Cir. 1994) (unpublished table decision). *Atkins* involved a retaliation claim where the plaintiff asserted that his return from a temporary grade 6 position to his permanent grade 4 position, and the accompanying salary decrease and change in duties from supervisor to production mechanic, constituted an adverse employment action. The court determined that this was not an adverse employment action because the terms of the collective bargaining agreement provided that an employee who was temporarily promoted would return to their previous job classification at the conclusion of the temporary promotion. *Id*. at *8. On appeal, the Tenth Circuit found that the "trial court accurately concluded that plaintiff failed to offer any evidence that he 'suffered an adverse employment action.'" *Atkins*, 28 F.3d 112, *1. *But see Stinnett v. Safeway*, 337 F.3d 1213, 1217-18 (10th Cir. 2003) (finding that a transfer from a temporary to permanent position constituted an adverse employment action where the plaintiff's duties significantly changed from providing skilled technical assistance to wrapping meat, and stating that the defendant's

6

proffered reason for the reversion - that there was no longer any work for the plaintiff in the temporary position - was to be considered when analyzing the defendant's nondiscriminatory justification at the second and third steps of the *McDonnell Douglas* inquiry).

Courts in other circuits have found that a return from a temporary to permanent position may not be an adverse employment action, but those determinations relied on facts somewhat dissimilar from this case. *See Forkkio v. Tanoue*, 131 F.Supp.2d 36 (D.C. 2001), *aff'd*, 306 F.3d 1127 (D.C. Cir. 2002); *Whittington v. North Carolina Dep't of Juvenile Justice and Delinquency Prevention*, No. Civ. 1:05CV348, 2006 WL 909141, *3 (W.D.N.C. April 7, 2006) (alluding to the potential outcome of the case if the plaintiff's position was a temporary position which expired by duration, and citing *Forkkio* for the proposition that a reversion from a temporary position with "durational limits" to a permanent position does not constitute an adverse employment action). For example, in *Forkkio* the court found that a reversion from a temporary grade 15 position to the plaintiff's permanent grade 14 position did not constitute an adverse employment action. The court based this determination not only on the express temporary nature of the grade 15 position, but on the fact that the plaintiff did not suffer a reduction in salary or benefits and performed the same work when he returned to the grade 14 position. *Forkkio*, 131 F.Supp.2d at 43. The court also noted that the temporary position was posted as a permanent position and that the plaintiff chose not to apply. *Id*.

In this case, there is no evidence that the Plaintiff's OCA position had a predetermined duration and, unlike in *Forrkio*, the Plaintiff's return to her permanent position was accompanied by a return to a lower pay rate. However, there is no dispute that the OCA position was temporary and that the Plaintiff knew of this limitation.

Despite the decrease in pay associated with the Plaintiff's reversion, other factors support a finding that the reversion to the permanent position was not an adverse employment action. Temporary OCA employees had to be returned to their permanent position at the conclusion of the

temporary OCA position. According to the Plaintiff, union rules required that OCA positions had to be posted as permanent positions before they could be converted to permanent positions. (Escamilla Dep. at 60.) The postings would invite applicants to apply for the position, so that the individual who filled the temporary OCA position was not assured of getting the permanent position.

Following the Plaintiff's return to her permanent position, the temporary position was reclassified and posted as a permanent position. The Plaintiff had the opportunity to apply for this position, which she did, and she was one of several in-house candidates who tested and interviewed for the position without success. Based on the known temporary nature of the OCA position, the union rules requiring the return of an OCA employee to his or her permanent position at the temporary position's conclusion, and the Plaintiff's opportunity to apply for the reclassified permanent administrative assistant position, the Court concludes that there was no material adverse employment action when the Plaintiff was returned to her permanent position.

The Plaintiff next contends that she was denied the opportunity to learn the skills of a buyer in the special projects coordinator job. However, the Plaintiff testified that when she asked to take the related training classes, she was permitted. (Escamilla Dep. at 41, 53-54.) The Plaintiff signed up for one class and was reimbursed by the City, and chose not to take the other course. (*Id.*) Furthermore, the position of special projects coordinator was never created. (Escamilla Dep. at 23, 52; Kirk Aff. at ¶11.) Even if the position had been created, it would have been a Level 26 position, below the Plaintiff's Level 28 purchasing aide position. (*Id.*)

The Plaintiff also seems to argue that Kirk's attempt to add the duty of answering the main phone to her responsibilities was discriminatory and possibly an adverse employment action. A "mere inconvenience or alteration of job responsibilities" is not an adverse employment action. *Hollins*, 188 F.3d at 662. Therefore, the Plaintiff has failed to show that she suffered an adverse employment action.

## 2.     Disparate Treatment

The Plaintiff attempts to meet the fourth prong under a theory of disparate treatment. Where there is no direct evidence of discriminatory intent, proof of discriminatory motive can be inferred from the mere fact of differences in treatment. *See Shah v. General Elec. Co.*, 816 F.2d 264, 267 (6th Cir. 1987). To meet the fourth prima facie element under a claim of disparate treatment, "the plaintiff must produce evidence that: (1) she is a member of a protected class, and (2) for the same or similar conduct she was treated differently from similarly situated [non-protected] employees." *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 658 (6th Cir. 1999).

The Plaintiff, as the only minority employee working in an OCA position, claims that other non-minority employees in OCA positions were treated more favorably. The Plaintiff alleges that a "reasonable inference" can be drawn by this disparate treatment. Under a theory of disparate treatment, "the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in all of the *relevant* aspects" for the two to be considered similarly-situated. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original) (internal quotation marks omitted). "Relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) (citing *Ercegovich*, 154 F.3d at 352).

The Plaintiff fails to show that the non-minority employees in OCA positions were similarly situated in all relevant aspects. The Plaintiff's temporary position was as an administrative assistant, while the identified non-minority OCA employees[4] held the positions of senior accountants and principal accountant. (Franse-Hornlein Aff. at ¶¶ 7-9, 12.)  The non-minority OCA employees

---

[4] Sheila Wheeler, Joyce Norin, Mark Colby, Kitty Lipsky, and Randy Endsley.

therefore reported to different supervisors than did Plaintiff.[5] (Escamilla Dep. at 43; Franse-Hornlein Aff. at ¶¶ 11-12.)  Because the Plaintiff and the non-minority OCA's held different positions and reported to different supervisors, there is no indication that they performed similar duties or were held to the same performance standards. Based on these characteristics, the Plaintiff was not similarly situated to the non-minority OCA employees.[6]

The Plaintiff also points to a specific Caucasian employee, Karen Klein, as a similarly situated employee who was given opportunities for which the Plaintiff was qualified and interested. While the Plaintiff was working as an OCA administrative assistant, Klein was working as an OCA purchasing aide.  Klein was returned to her permanent position on August 14, 2004, the same day the Plaintiff returned to her permanent purchasing aide position. (Franse-Hornlein Aff. at ¶ 13.) The Plaintiff claims that she was denied the same opportunities as Klein, specifically that she was denied participation in two training courses that Klein was enrolled in, and that Klein was given a position of "special projects coordinator" for which the Plaintiff was not considered.[7]  As previously discussed, the Plaintiff asked to take the training classes that Klein was enrolled in and was permitted, and the position that the Plaintiff claims she was not considered for was never created. (Escamilla Dep. at 23, 41, 52-54; Kirk Aff. at ¶11.)  The Plaintiff has failed to show that Klein was treated more favorably, and failed to identify any similarly situated non-minority employee who was treated differently.

---

[5]The identified employees reported either to Tom Korkoske or Antonia Kraus. Although the Plaintiff also reported to Kraus, Mark Colby, the lone identified employee who reported to Kraus, had ceased reporting to Kraus in April 2004, when he was returned to his permanent position and then promoted to Senior Principal Accountant.

[6]In addition, the Plaintiff does not present any evidence that the alleged similarly situated employees were treated differently.  The Defendants submit the affidavit of the City's principal personnel specialist, Helen Franse Hornlein, who states that, pursuant to union rules, Wheeler, Norin, and Colby all interviewed for the reclassified-as-permanent OCA positions that they formerly held and were all returned to their permanent positions before being promoted. (Kirk Aff. at ¶¶ 7-9.)

[7]The special projects coordinator position was designed to be a Level 26 position, below the Plaintiff's Level 28 classification. (Kirk Aff. at ¶ 11.)

10

The Plaintiff has failed to satisfy the prima facie requirements of an adverse employment action and disparate treatment by the Defendants. The Defendants are therefore entitled to summary judgment.

**B.    Non-Discriminatory Justification**

Even assuming that the Plaintiff could establish a prima facie case, the Plaintiff fails to rebut the Defendants' legitimate, non-discriminatory justification for their actions. The Plaintiff "must allege more than a dispute over the facts upon which his discharge was based" and "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir.1998)). The Plaintiff bears the burden of producing "'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Braithwaite*, 258 F.3d at 493).

The Defendants assert that the Plaintiff was one of several employees returned to her permanent position from her temporary OCA position due to budget and logistics concerns. The Defendants have shown that other employees in the finance department were returned to their permanent positions, contrary to the Plaintiff's contentions. The Defendants have also shown that the Plaintiff was given the training opportunities she claims she was denied, and that the position that the Plaintiff claims for which she was not considered was never created.

The Plaintiff does not submit any direct evidence that Kirk, or any other individual in a supervisory or decision making position, exhibited any sort of racial or national origin animus towards the Plaintiff. The Plaintiff asks the Court to infer from the Plaintiff's previous employment

11

record that the Defendants' stated reason for allegedly not providing the same opportunities as given to non-minority employees was a pretext for racial discrimination.

The Plaintiff relies on the affidavit of Kirk's predecessor, Douglas Rubley, who stated that the Plaintiff's performance in the temporary position met his expectations. The Plaintiff presents a letter from Rubley to Kirk, written after Rubley's retirement, recommending the Plaintiff for the administrative assistant position or equivalent positions. The Plaintiff also submits an affidavit from her union representative, Michael Parker, who indicates that in his belief, the Plaintiff was qualified for the administrative assistant position.[8]

However, this is insufficient to meet the Plaintiff's burden of showing that the Defendants' nondiscriminatory reason is a pretext for discrimination. The Plaintiff fails to submit any contemporaneous evidence which contradicts Kirk's assessment of her work. For example, the Plaintiff does not present any employment record or performance evaluation to show that the Defendants' non-discriminatory reason had no basis in fact or to support the Plaintiff's own assertions regarding her job performance. The Plaintiff concedes that Kirk was not the only supervisor who felt that the Plaintiff was not qualified for other positions. Antonia Kraus, the Plaintiff's direct supervisor, also stated that the Plaintiff was not ready to handle the same duties as Klein because the Plaintiff did not possess the requisite skills for working with Excel and Word. (Escamilla Dep. at 62.) The Plaintiff contends that because she was certified in those programs,

---

[8] The Plaintiff also submits a letter written by Parker, in his capacity as union representative, to the City, regarding the Plaintiff's having been "bypassed for a favorable assignment by an employee with three years of seniority." (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. Ex. 2.) According to the Plaintiff's testimony, however, she was given the same opportunity as Klein to attend training classes, and the position for which the Plaintiff was allegedly bypassed was never created and would have been below the Plaintiff's Level 28 purchasing aide position. (Escamilla Dep. at 23, 41, 52-54.)

Kraus' statements were false. There is no evidence, however, that Kraus was aware of the Plaintiff's certification in these programs.

In response to her attempt to have her permanent Level 28 position reclassified to a higher level, the Plaintiff contends that Kirk mischaracterized her duties as supportive and repetitive.[9] (Escamilla Dep. at 81.) Although no one at the meeting disagreed with Kirk, the Plaintiff claims that other individuals, whom the Plaintiff does not identify, later indicated their disagreement with Kirk's characterization. *Id*. The Plaintiff fails to identify these individuals or to introduce any evidence rebutting Kirk's assertion or showing it to be discriminatory. The Plaintiff has not presented sufficient evidence from which the jury could reject the Defendants' justification and find that the Defendants intentionally discriminated against the Plaintiff on the basis of race.

Therefore, the Defendants would also be entitled to summary judgment under the *McDonnell Douglas* framework because of the Plaintiff's failure to demonstrate that the Defendants' non-discriminatory justifications were a pretext for discrimination.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Defendants' motion for summary judgment.

An Order consistent with this Opinion will be entered.

Dated: March 2, 2007                          /s/ Gordon J. Quist
                                                                  GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE

---

[9] The Plaintiff presents no evidence, and does not contend, that Kirk was involved in making the decision not to reclassify her purchasing aide position.